FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.
2009 FEB 10 PM 2:27
CLERK R. Ack
SO. DIST. OF GA.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**WAYCROSS DIVISION**

MARILYN HALE,

Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

Defendant.

CIVIL ACTION NO.: CV507-103

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of the Commissioner, denying her claim for Disability Insurance Benefits. Plaintiff urges the Court to reverse the Commissioner's decision and enter an award finding Plaintiff disabled, or, in the alternative, to remand this case for further consideration of the evidence. Defendant asserts that the Commissioner's decision should be affirmed.

Plaintiff protectively filed an application for a period of disability and disability benefits on April 7, 2004, alleging that she became disabled on March 19, 2003, as the result of heart disease, arthritis, shortness of breath, acid reflux, back pain, memory disorder, and degenerative joint disease. (Tr. at 20, 76). After her claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On December 8, 2005, ALJ J. Richard Stables ("ALJ" or "ALJ Stables") held a hearing at which Plaintiff appeared and testified. (Tr. at 20). The ALJ determined that Plaintiff was

not disabled. (Tr. at 26). The Appeals Council granted Plaintiff's request for review of the ALJ's decision for the purpose of considering additional evidence.[1] (Tr. at 7-11). After considering the additional evidence, the Appeals Council supplemented and adopted the findings and conclusions of ALJ Stables, and this became the final decision of the Commissioner for judicial review. (Tr. at 11).

Plaintiff, born on April 29, 1953, was fifty-three (53) years old when the ALJ issued his decision. (Tr. at 60). She has a GED and a secretarial bookkeeping certificate. (Tr. at 519). Her past relevant work experience includes work as a bookkeeper, clerical office worker, and receptionist. (Tr. at 77).

## ALJ'S FINDINGS

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the plaintiff is not engaged in such activity, then the second inquiry asks whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140-41. If the claimant's impairment or combination of impairments is not "severe," then disability benefits are denied. Yuckert, 482 U.S. at 141. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by

[1] The additional evidence was allegedly submitted to the ALJ prior to the issue of his opinion. However, the evidence was not part of the record or discussed in ALJ Stables' opinion.

the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, subpt. P. App. 1; Yuckert, 482 U.S. at 141. If the impairment meets or equals one of the listed impairments, then the plaintiff is presumed disabled. Id. If the impairment does not meet or equal one of the listed impairments, then the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing her past relevant work. Id. If the claimant is unable to perform her past relevant work, then the final step of the evaluation process determines whether she is able to perform other work in the national economy, considering her age, education, and work experience. Yuckert, 482 U.S. at 142. Disability benefits will be awarded only if the claimant is unable to perform other work. Id.

ALJ Stables followed the sequential process to determine that Plaintiff had not engaged in substantial gainful employment since March 19, 2003. (Tr. at 8, 22). At Step Two, the ALJ determined that Plaintiff had the severe impairments of coronary artery disease, status post left anterior descending stent placement in 1998, and osteoarthritis/degenerative joint disease of the left knee, with x-rays showing only "mild" degenerative changes. (Tr. at 22). The ALJ determined, at Step Three, that Plaintiff's medically determinable impairments did not meet or medically equal a listed impairment. (Tr. at 23). At Step Four, the ALJ found that Plaintiff had the residual functional capacity to perform her past relevant work as a bookkeeper. (Tr. at 25). The Appeals Council supplemented the ALJ's findings with its consideration of the additional evidence submitted by Plaintiff. (Tr. at 7-11). The Appeals Council concluded that the additional medical evidence warranted no changes in the ALJ's findings. (Tr. at 9).

## ISSUES PRESENTED

The issues presented in this review are whether:

I. The Commissioner's denial of Plaintiff's disability claim is not supported by substantial evidence;

II. Plaintiff's treating physician's opinion was not properly discounted;

III. the Commissioner did not consider Plaintiff's impairments in combination;

IV. the Commissioner ignored Plaintiff's symptoms; and

V. the Commissioner's findings regarding Plaintiff's left knee impairment and MRI were not supported by substantial evidence.

## STANDARD OF REVIEW

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F. 2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F. 2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F. 3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Walden v. Schweiker, 672 F. 2d 835, 838-39 (11th Cir. 1982). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.

3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F. 2d at 1146.

## DISCUSSION AND CITATION TO AUTHORITY

### I. Substantial evidence supports the Commissioner's denial of Plaintiff's disability claim.

ALJ Stables found that Plaintiff had the severe impairments of coronary artery disease, status post left anterior descending stent placement in 1998, and osteoarthritis/degenerative joint disease of the left knee, with x-rays showing only mild degenerative changes. The ALJ further found that Plaintiff's impairments of sensory neuropathy in the left leg and a medial meniscus tear of the left knee were not severe. The ALJ observed that Plaintiff underwent a nerve study of the lower extremities that revealed findings indicative of sensory neuropathy, but that a few months later it was noted that the neuropathy had improved. The ALJ further observed that subsequent progress reports indicate that Plaintiff continued with neuropathy symptoms, but was better than she had been in the past. (Tr. at 22). ALJ Stables remarked that an x-ray of Plaintiff's left knee shows only mild degenerative changes. ALJ Stables noted that an MRI of Plaintiff's left knee revealed findings suggestive of a medial meniscus tear, but other than cortisone injections to her knee for which she received 50% improvement, there has been no significant medical treatment for her knee. The ALJ observed that Plaintiff reported that her residual symptoms were tolerable after her last injection. The ALJ further observed that Plaintiff did not complain of knee problems at subsequent visits to Dr. Morton. (Tr. at 23).



AO 72A
(Rev. 8/82)

The ALJ observed that Plaintiff testified that she has back and hip pain. ALJ Stables further observed that Plaintiff first reported her back pain as occasional, which is markedly different from the constant pain she testified to having at the hearing. ALJ Stables remarked that subsequent progress notes reflect that Plaintiff reported pain "at times". The ALJ further remarked that Plaintiff reported doing reasonably well in December of 2004, and that there were no noted complaints of back pain through June of 2005. The ALJ noted that Plaintiff reported having back and hip pain "at times" in August and November of 2005. ALJ Stables observed that Dr. Morton gave an impression of probable osteoarthritis of the hip and spine. ALJ Stables further observed that Plaintiff is not receiving any significant medical treatment for back and hip pain and that there is nothing in the record indicating that more aggressive treatment is needed. The ALJ concluded that Plaintiff's hip and back pain and probable osteoarthritis are not severe. (Tr. at 23).

The ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment. ALJ Stables further found that Plaintiff has the residual functional capacity to perform light work. (Tr. at 23). ALJ Stables concluded that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that her statements concerning the intensity, duration, and limiting effects of these symptoms were not fully credible because the objective medical evidence clearly failed to support her subjective allegations of frequency or intensity of cardiac or musculoskeletal symptoms. ALJ Stables observed that Plaintiff reported being unable to lift greater than ten pounds and could not vacuum or mop for more than fifteen minutes, but she testified at the hearing

that she could do more than this. The ALJ remarked that Plaintiff reported memory loss and confusion, but no such complaints are documented in treatment records. (Tr. at 24).

The ALJ noted that the record shows Plaintiff has a history of premature atherosclerosis, stent placement, and in-stent re-stenosis. The ALJ further noted that Plaintiff had brachy therapy and a second stent placed in 2002. Plaintiff was doing exercise training of forty-one continuous minutes with no EKG changes and normal blood pressure in January 2003. ALJ Stables observed that Plaintiff testified to having constant chest discomfort, but that on February 11, 2003, Plaintiff reported on and off chest discomfort. Plaintiff was evaluated for unstable angina, but her symptoms resolved in a short period of time and a heart catheterization the next month showed her stents were patent and ventricular functioning looked good. The ALJ noted that Plaintiff denied chest pain and reported improvement of her strength in a follow-up visit. (Tr. at 24). ALJ Stables further noted that Dr. Morton's treatment records reflect that Plaintiff did not report any chest pain or shortness of breath in any office visit after the alleged disability onset date. (Tr. at 24-25). ALJ Stables remarked that Plaintiff was evaluated for another episode of angina, but a heart catheterization later that month revealed only a mild in-stent restenosis. Based on those findings, the cardiologist's impression was that Plaintiff's chest pain was non-cardiac in nature and no further treatment was recommended. The ALJ observed that Plaintiff was seen by Dr. Morton shortly thereafter and reported some pressure sensation at times that was helped with belching and occasional heartburn/indigestion. The ALJ noted that Plaintiff's physical examinations were also within the normal limits. ALJ Stables remarked that Plaintiff

testified at the hearing that she takes Nitroglycerin four times a week, or daily in a bad week, but no such reports are noted in her treatment records. ALJ Stables further remarked that Plaintiff's testimony is contradicted by the fact that she denied chest pain at every office visit with Dr. Morton after her alleged disability onset date and that her prescription for Nitroglycerin was last filled on October 30, 2003. (Tr. at 25).

ALJ Stables observed that Plaintiff testified that she was very limited, but by her own testimony and description of daily activities, she demonstrates the capacity to sustain lifting, standing, walking, handling, fingering, bending, and other physical requirements for light work. The ALJ further observed that despite Plaintiff's allegations of frequent pain, the only pain medication on her medication list is for arthritis. The ALJ found that Plaintiff's allegations as to the extent of her limitations are not supported by the objective medical evidence. The ALJ noted that the state agency medical physicians who reviewed the objective medical evidence found Plaintiff's impairments to be severe, but that she was capable of performing work at the light exertional level. The ALJ remarked that the opinions of the state agency physicians are fully supported by the objective medical evidence and were given significant weight. ALJ Stables found Plaintiff to be capable of performing her past relevant work as a bookkeeper. (Tr. at 25). The ALJ further found that Plaintiff was not under a disability. (Tr. at 26).

The Appeals Council reviewed the additional evidence submitted by Plaintiff.[2] The Appeals Council observed that the clinical records of Dr. Pappas revealed that Plaintiff complained of numbness and tingling of her hands and feet, with bilateral hand and wrist pain. The Appeals Council further observed that neurological examination

[2] The additional evidence considered by the Appeals Council consisted of medical records from Dr. Stephen G. Pappas, medical records from Ware County Physical Therapy, Inc., comments and a medical source statement from Dr. Morton, and a list of medications and pharmacy records. (Tr. at 8).

showed some sensory deficits in the upper and lower extremities, but Tinel and Phalen signs were present at the wrists. The Appeals Council noted that motor strength was full, with normal muscle tone and no atrophy. The Appeals Council remarked that Plaintiff's gait and station were normal. The Appeals Council further remarked that an MRI of the lumbar spine was normal. The Appeals Council observed that an EMG and nerve conduction velocity studies of the left arm and leg were unremarkable except for mild median neuropathy at the left wrist. The Appeals Council noted that that finding was not of such clinical significance that it precluded the performance of sustained fine and gross manipulation. (Tr. at 8).

The Appeals Council observed that the medical evidence revealed that Plaintiff has a history of coronary artery disease with recurrent stenosis, which required revascularization on several occasions. (Tr. at 8). The Appeals Council noted that the most recent cardiac catheterization showed a widely patent left anterior descending artery with only mild in-stent re-stenosis. The Appeals Council observed that the study results were essentially normal otherwise. The Appeals Council remarked that the records received from Dr. Morton revealed that, cardiac wise, Plaintiff's condition was relatively stable. The Appeals Council observed that Plaintiff began to experience occasional chest pain and palpitations with a marked decrease in exercise tolerance in February 2007. Plaintiff was then referred for another cardiac work-up. The Appeals Council remarked that an echocardiogram showed normal left ventricular function with a normal ejection fraction at 60% and some mild regurgitation with an enlarged left atrium. The Appeals Council further remarked that Plaintiff underwent an Adenosine Nuclear

Study, which showed normal resting and exercise EKG's through six minutes with no ischemic ST changes and an ejection fraction of 70%. (Tr. at 9).

The Appeals Council found that the additional medical evidence did not warrant any change in the ALJ's findings. The Appeals Council noted that it considered Dr. Morton's comments and medical source statement. The Appeals Council observed that Dr. Morton indicated that due to the effect of the combination of Plaintiff's impairments, she was unable to perform any sustained work activity, even at the sedentary level, because of a need to frequently change positions, lie down one to two times during an eight hour work shift, and be absent from work three or more times per month. The Appeals Council remarked that the objective medical and clinical evidence did not show that Plaintiff's impairments precluded the performance of light work. The Appeals Council further remarked that Dr. Morton's office notes and clinical records did not show positive findings which could be reasonably consistent with Plaintiff's allegations or the limitations imposed by him. The Appeals Council observed that the objective medical evidence showed that Plaintiff recently underwent a comprehensive cardiac work-up which was negative, a normal MRI of the lumbar spine, EMG and nerve condition studies of the left upper and lower extremities that were negative except for some mild median neuropathy at the left wrist, and a sleep apnea study that was negative. The Appeals Council noted that there is no objective evidence of a significant gastric impairment. It was further noted that the subjective complaints presented during the medical consultations did not appear to be consistent with the level and intensity of the symptoms alleged during the hearing or the limitations described by Dr. Morton. The Appeals Council concluded that Dr. Morton's statements and opinions regarding

Plaintiff's impairments and limitations were not supported by the evidence and, consequently, his opinion was not controlling or determinative of the issue of disability. (Tr. at 9). The Appeals Council affirmed the ALJ's findings that Plaintiff was not disabled and that she had the residual functional capacity to perform her past relevant work as a bookkeeper. (Tr. at 9-10).

The Commissioner's decision to deny Plaintiff's disability benefits is supported by substantial evidence. The Commissioner's findings regarding Plaintiff's severe impairments of coronary artery disease, status post left anterior descending stent placement in 1998, and osteoarthritis/degenerative joint disease of the left knee; Plaintiff's failure to have an impairment that meets or equals a listed impairment; Plaintiff having the residual functional capacity to perform her past relevant work; and that Plaintiff was not disabled are supported by substantial evidence and based on appropriate legal standards. See Cornelius, 936 F. 2d at 1146.

**II. The Commissioner properly discounted Dr. Morton's medical opinion.**

Plaintiff contends that the Appeals Council improperly discounted the medical opinion of Dr. Morton, her long-term treating physician. (Doc. No. 22, p. 9). Plaintiff further contends that the Appeals Council failed to identify any medical opinion to support its finding that she could perform light work. (Id. at 10). Plaintiff asserts that the Commissioner did not consider the fact that Dr. Morton referred her to several specialists, whose records provide substantial evidence supporting Dr. Morton's opinion that Plaintiff was disabled. (Id. at 11).

Defendant contends that substantial evidence supports the Commissioner's decision to discount Dr. Morton's opinion. (Doc. No. 25, pp. 5-9). Defendant asserts

that Dr. Richard Fehlenberg and Dr. Richard H. Johnson reviewed Plaintiff's medical records and concluded that she was able to do light work. (Id. at 5). Defendant further asserts that the Appeals Council provided good cause for discounting Dr. Morton's medical opinion. (Id. at 6-9).

A treating physician's opinion is entitled to substantial weight unless good cause not to do so exists. Edwards v. Sullivan, 937 F. 2d 580, 583 (11th Cir. 1991); Jones v. Bowen, 810 F. 2d 1001, 1005 (11th Cir. 1986). There is good cause when the medical opinion is conclusory, unsupported by objective medical findings, or not supported by evidence from the record. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997); Edwards, 580 F. 2d at 583. When the Commissioner rejects the opinion of the treating physician, he must give "explicit and adequate" reasons for the rejection. Elam v. Railroad Retirement Board, 921 F. 2d 1210, 1215 (11th Cir. 1991). The ALJ is required to "state with particularity the weight he gave different medical opinions and the reasons therefore." Sharfarz v. Bowen, 825 F. 2d 278, 279 (11th Cir. 1987).

Plaintiff's assertion that Dr. Morton's opinion is supported by substantial evidence is irrelevant. The law requires an inquiry into whether substantial evidence supports the Commissioner's opinion, not the treating physician's opinion. The Appeals Council gave "explicit and adequate" reasons for rejecting the opinion of Dr. Morton. See Elam, 921 F. 2d at 1215. The Appeals Council noted that it considered the objective medical and clinical evidence and, specifically, Dr. Morton's comments and medical source statement. The Appeals Council found that the record did not support Dr. Morton's opinion and asserted that his statement was not controlling or determinative on the issue of disability. (Tr. at 9). Plaintiff contends that the Appeals Council failed to identify

AO 72A
(Rev. 8/82)

a medical opinion that supports its finding that she could perform light work. However, the ALJ observed that the state agency reviewing physicians found that Plaintiff could perform work at the light exertional level. The ALJ made a specific finding that substantial weight was given to the opinions of the reviewing physicians. (Tr. at 25). Accordingly, the Commissioner's decision to discount Dr. Morton's opinion is supported by substantial evidence and is based on the appropriate legal standards.

**III. The Commissioner properly considered Plaintiff's impairments in combination.**

Plaintiff contends that the Commissioner did not consider the effect of her impairments in combination. Plaintiff asserts that the Commissioner must consider the combined effects of all impairments when evaluating disability. Plaintiff notes that Dr. Morton opined that the combination of her impairments rendered her disabled. Plaintiff asserts that a finding that she is disabled is required when the combination of her impairments is considered. (Doc. No. 22, pp. 11-13).

If a claimant has more than one impairment, and none of them meets or equals a listed impairment, the symptoms, signs, and laboratory findings will be reviewed to determine if the combination of impairments is medically equal to any listed impairment. 20 C.F.R. § 404.1526(b)(3). When determining whether the combination of impairments is sufficient to render a claimant disabled, the ALJ will consider the combined effect of all of claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. 20 C.F.R. § 404.1523. "An ALJ must make specific and well-articulated findings as to the effect of the combination of impairments when determining whether an individual is disabled." Davis v. Shalala, 985 F. 2d 528, 534 (11th Cir. 1993). In Jones v. Bowen, after noting that the ALJ made an

explicit finding that the record did not establish an impairment or combination of impairments that rendered the plaintiff disabled, the court observed, "the Secretary could have set forth more specific findings regarding the effect of the combination of impairments on Jones's ability to work; however, given the ALJ's exhaustive consideration of the effect of these impairments on Jones's residual functional capacity, we conclude that the Secretary's findings were sufficient." 810 F. 2d 1001, 1006 (11th Cir. 1986).

The Commissioner properly considered Plaintiff's impairments in combination. ALJ Stables explicitly found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment. (Tr. at 23). The ALJ made extensive findings regarding the effect of Plaintiff's alleged sensory neuropathy, left knee impairment, arthritis, stress, back pain, hip pain, memory problems, heart condition, chest pain, and shortness of breath. (Tr. at 22-25). The Appeals Council considered the effect of Plaintiff's alleged sensory neuropathy, coronary artery disease, chest pain, sleep apnea, spinal problems, and gastric impairment. (Tr. at 8-9). The Appeals Council noted that Dr. Morton opined that the combination of impairments rendered Plaintiff disabled and then concluded that "the objective medical and clinical evidence did not show that the claimant's impairments were/are of such severity or chonicity to preclude the performance of light work." (Tr. at 9). Here, as in Jones, the Commissioner exhaustively considered the effect of Plaintiff's impairments and made the explicit finding that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. See Jones, 810 F. 2d at 1006. The Commissioner properly considered Plaintiff's impairments in combination.

## IV. The Commissioner did not ignore Plaintiff's symptoms.

Plaintiff contends that the Commissioner ignored evidence of her shortness of breath, mild bilateral facet arthrosis, severe pain documented by her physical therapist, findings by Dr. Manuel Cuesta of sensory neuropathy in both lower extremities, and fatigue. (Doc. No. 22, pp. 12-13). Defendant asserts that the Commissioner did not ignore evidence of Plaintiff's alleged chronic shortness of breath or neuropathy in her lower extremities. Defendant acknowledges that the Appeals Council did not address evidence of Plaintiff's pain documented by her physical therapist, but contends that the totality of the evidence supports the Appeals Council's findings regarding her residual functional capacity. Defendant further contends that the medical records did not contain a doctor's finding that she was suffering from fatigue, only Plaintiff's complaints that she was fatigued. (Doc. No. 25, pp. 8-9).

Plaintiff's contentions that the Commissioner ignored evidence of her shortness of breath, mild bilateral facet arthrosis, sensory neuropathy in both lower extremities, severe pain documented by her physical therapist, and fatigue are without merit. ALJ Stables noted that Dr. Morton's treatment records reflect that Plaintiff did not report shortness of breath in any visit after her alleged disability onset date. (Tr. at 24-25). With regard to the mild bilateral facet arthrosis, the ALJ observed that Plaintiff's complaints of back pain were sporadic and that she was not receiving any significant medical treatment for her back pain. The ALJ found that Plaintiff's back pain was not severe. (Tr. at 23). ALJ Stables remarked that Dr. Morton opined that Plaintiff's neuropathy symptoms had improved in an August 2005 checkup and subsequent progress reports indicated that, while she continued with neuropathy symptoms, she

was better than she had been in the past. (Tr. at 22). The Commissioner did not specifically address the physical therapist's findings of pain, but the evidence merely documented an impairment already addressed extensively by the Commissioner. ALJ Stables remarked that although Plaintiff reports frequent pain, she is only on one pain medication, Mobic, which is for arthritis. (Tr. at 25). In fact, Plaintiff testified that the combination of Mobic and Advil gets rid of her hip, leg, and back pain. (Tr. at 524). The ALJ noted that Plaintiff's complaints of chest pain are contradicted by the fact that she denied chest pain at every office visit with Dr. Morton after her alleged disability onset date and that her Nitroglycerin, which she testified to taking four times a week, was last filled on October 30, 2003. (Tr. at 24-25). The physical therapist also noted that Plaintiff did well with the treatment and exercises. (Tr. at 466). As with the physical therapist's findings of pain, Dr. Cuesta's findings of sensory neuropathy are merely cumulative evidence of an impairment exhaustively addressed by the Commissioner. The ALJ found Plaintiff's sensory neuropathy to be non-severe, noted that it had improved, and that progress reports indicated that she was better than she had been in the past. (Tr. at 22). The Appeals Council observed that neurological examinations showed some sensory deficits in the upper and lower extremities, but Tinel and Phalen signs were present at the wrists. The Appeals Council further observed that Plaintiff had full motor strength with normal muscle tone and no atrophy. The Appeals Council remarked that EMG and nerve conduction velocity studies of the left arm and leg were unremarkable except for mild median neuropathy at the left wrist. The Appeals Council concluded that this finding was not of such clinical significance to preclude the performance of sustained fine and gross manipulation. (Tr. at 8). The Commissioner did not address

the effect of Plaintiff's alleged fatigue, but Plaintiff's disability application did not list fatigue as a factor contributing to her disability and Dr. Morton, in his medical opinion that Plaintiff heavily relies upon, did not identify fatigue as an impairment that combined to disable Plaintiff. The Commissioner can not be expected to address every minor alleged impairment, especially where, as here, the alleged impairment has scant supporting evidence in the record. Plaintiff references the medical records of Dr. Joel Ferree and Dr. Mitchell Rothstein as evidence of her fatigue. However, Dr. Ferree's medical records merely documented Plaintiff's complaints of fatigue at a single office visit. Dr. Ferree noted that fatigue is a common side effect of a medication she was taking and suggested switching to a different medication. (Tr. at 269-270). Dr. Rothstein's medical records merely noted Plaintiff's complaints of fatigue and his medical conclusions did not make reference to fatigue. (Tr. at 468, 471). The Commissioner did not ignore any impairment that allegedly contributed to Plaintiff's disability.

## V. Substantial evidence supports the Commissioner's findings regarding Plaintiff's left knee impairment and back MRI.

Plaintiff asserts that the Commissioner improperly characterized the severity of her left knee impairment. Plaintiff contends that Dr. Randall O'Brien opined that she had a tear of the medial meniscus and noted that she had joint effusion. (Doc. No. 22, p. 13). Plaintiff asserts that the Appeals Council erroneously found that the MRI of her back was normal. (Id. at 12). Defendant asserts that the knee impairment was properly deemed as non-severe because there is no evidence that the problem existed for at least twelve continuous months. (Doc. No. 25, p. 11). Defendant contends that the

AO 72A
(Rev. 8/82)

Appeals Council's finding that Plaintiff's MRI was normal is supported by substantial evidence. (Id. at 7).

The Commissioner's findings regarding Plaintiff's left knee impairment and MRI are supported by substantial evidence. The ALJ noted that an x-ray of the left knee showed only "mild" degenerative changes. The ALJ further noted that injections were the only significant medical treatment Plaintiff received for the knee and that she received 50% improvement from the injections. ALJ Stables observed that Plaintiff reported that her residual symptoms were tolerable after her last injection. ALJ Stables remarked that Plaintiff did not complain of left knee problems in subsequent visits to Dr. Morton. (Tr. at 23). Thus, there is substantial evidence supporting the Commissioner's determination that Plaintiff's left knee impairment was not severe. The Appeals Council noted that an MRI of the lumbar spine performed by Dr. Pappas was normal. (Tr. at 8). Despite Plaintiff's contention, there is nothing in Dr. Pappas' findings that indicates a severe impairment was present. Dr. Pappas' only positive finding was that there was mild bilateral facet arthrosis at the L4-L5 and L5-S1 levels. (Tr. at 443). Additionally, the ALJ noted that Plaintiff's complaints of back pain were sporadic and that she has not received any significant medical treatment for her back pain. (Tr. at 23).

## CONCLUSION

Based on the foregoing reasons, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**.

So **REPORTED** and **RECOMMENDED**, this 10th day of February, 2009.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)