# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

| | |
|---|---|
| MARILYN HALE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.: CV507-103 |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Presently before the Court are Plaintiff's Objections to the Magistrate Judge's Report, wherein he recommended that the decision of the Commissioner of the Social Security Administration be affirmed. In her Objections, Plaintiff contends that the Commissioner and the Magistrate Judge erred by: ignoring medical evidence in finding that her only severe impairments were coronary artery disease and mild arthritis of the left knee; basing their findings that she could perform light duty work solely on the opinions of reviewing doctors almost two years after the last reviewing doctor evaluated her medical records; and by improperly categorizing the severity of her left knee impairment. (Doc. No. 28, pp. 1-4). Plaintiff asserts that the Commissioner and the Magistrate Judge ignored: Dr. Cuesta's findings of sensory neuropathy in both lower extremities; her physical therapist's documentation of her severe pain and limitation of motion; Dr. Pappas' documentation of bilateral lumbar facet arthrosis; and Dr. Pappas'

findings of sensory neuropathy and possible lumbar stenosis. (Id. at 3-4). Plaintiff further asserts that the Commissioner and the Magistrate Judge failed to take into consideration the evidence of her complaints of fatigue that were credited by Dr. Ferree and Dr. Rothstein. (Id. at 4). Plaintiff contends that the Magistrate Judge erred by supporting his conclusion that she was not disabled by observing that she had positive results on Phalen and Tinel tests because a positive result from either test is considered a diagnostic indication that the patient suffers nerve compression at the testing site. (Id. at 4-5).

Plaintiff's contention that the finding that she only had two severe impairments ignores the findings of Dr. Morton and other evaluating specialists is without merit. As the Magistrate Judge discussed in his Report, the Commissioner's findings regarding her severe impairments were supported by substantial evidence. (see Doc. No. 26). Dr. Morton's findings were properly discounted by the Commissioner (see Id. at 11-13) and the opinions of the specialists were taken into consideration by the Commissioner and the Magistrate Judge.

Plaintiff's contention that the severity of her left knee impairment was improperly characterized as "mild" is similarly without merit. The undersigned first notes that the Commissioner did not categorize Plaintiff's knee impairment as "mild", as Plaintiff contends. The Commissioner found that her left knee impairment was severe, with x-rays showing only "mild" degenerative changes. (Tr. at 22). In support of her contention, Plaintiff noted that her treating orthopedic surgeon, Dr. O'Brien: opined that she had a tear of her medial meniscus; noted joint effusion; injected her knee; observed that despite her pain improving after the injection, the knee pain was still interfering with

her activities of daily living; found moderate swelling in her knee; and noted that her knee gave way occasionally while walking. (Id. at 3-4). Plaintiff apparently failed to take notice of the visitation date for each of Dr. O'Brien's findings. On March 2, 2005, Dr. O'Brien found moderate swelling in her left knee, noted that it occasionally gave way while walking on level ground, and gave her a cortisone shot. (Tr. at 387). On March 16, Dr. O'Brien noted that Plaintiff received an injection at her last visit and that she was still having pain that interfered with her activities of daily living. (Tr. at 386). On March 17, Dr. O'Brien reviewed the results of Plaintiff's MRI and opined that there were signals suggestive of a medial meniscus tear and joint effusion. (Tr. at 385). Plaintiff neglects to mention that Dr. O'Brien subsequently decided that Synvisc injections would be her next treatment option on March 21. (Tr. at 384). Plaintiff received Synvisc injections that she tolerated well on March 23, March 30, and April 6. (Tr. at 381-83). Dr. O'Brien re-evaluated her left knee on May 19, and concluded that she had approximately 50% pain relief from the Synvisc injections and noted that Plaintiff found her residual symptoms tolerable. (Tr. at 380). A careful reading of the record reveals that Dr. O'Brien's findings were progressively positive. Dr. O'Brien's observations that Plaintiff's knee gave way while walking and that her knee pain was still interfering with her daily activities after it was injected were made after cortisone injections and prior to her treatment with Synvisc. Dr. O'Brien's final opinion, after the Synvisc injections, was that Plaintiff experienced approximately 50% pain relief and found that her residual symptoms were tolerable. Thus, Plaintiff's left knee impairment was properly characterized.

Plaintiff contends that the Commissioner and the Magistrate Judge erred by basing their finding that she could perform light duty work solely on the opinions of reviewing doctors nearly two years after the last reviewing doctor evaluated her medical records. Plaintiff notes that when the reviewing doctors formed their opinions, they did not have access to her medication list or the medical records from Dr. Morton, Dr. Ferree, Dr. Pilcher, Dr. O'Brien, Dr. Cuesta, Dr. Pappas, Dr. Rothstein, or her physical therapist Philip Suess. (Doc. No. 28, pp.1-2). The Commissioner did not base its finding that Plaintiff could perform light work solely on the opinions of the reviewing doctors. While the reviewing physicians formed their opinions without the benefit of the medical records cited by Plaintiff in her Objections, the ALJ (Tr. at 25) and the Appeals Council (Tr. at 9) found that the objective medical and clinical evidence in the record supported the conclusion that Plaintiff could perform light work. In his opinion, the ALJ considered medical records from Dr. Morton (Tr. at 23-25), Dr. Cuesta (Tr. at 22), Dr. Pilcher (Tr. at 25), and Dr. O'Brien (Tr. at 22-23). The Appeals Council reviewed Plaintiff's medication list (Tr. at 8) and the medical records from Dr. Ferree (Tr. at 9), Dr. Pappas (Tr. at 8), Dr. Rothstein (Tr. at 8), and Suess (Tr. at 8). Thus, it is clear that the finding that Plaintiff could perform light duty work was not based solely on the opinion of the reviewing doctors. It is equally clear that the Commissioner and the Magistrate Judge did not ignore Dr. Cuesta's findings of sensory neuropathy; Suess' documentation of Plaintiff's pain and limitation of motion; or Dr. Pappas' findings of bilateral lumbar facet arthrosis, sensory neuropathy, or possible lumbar stenosis. Further, Plaintiff's assertions regarding her complaints of fatigue are merely

reassertions of the contentions found in her original brief. The Magistrate Judge sufficiently addressed these assertions in his Report. (see Doc. No. 26, pp. 16-17).

The undersigned notes that the Magistrate Judge did not support his conclusion that Plaintiff does not have a severe impairment in her hands by observing that she had positive results in Phalen and Tinel tests. The Magistrate Judge merely remarked that the Appeals Council observed that Plaintiff had Phalen and Tinel signs present at her wrists. (Doc. No. 26, pp. 8-9). Regardless of the positive results in the Phalen and Tinel tests, there was substantial evidence supporting the finding that Plaintiff's hand impairments were not severe.

Plaintiff's Objections are without merit. The Report and Recommendation of the Magistrate Judge is adopted as the opinion of the Court. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is hereby authorized and directed to enter an appropriate Judgment of Dismissal.

**SO ORDERED**, this ___ day of March, 2009.

HONORABLE LISA GODBEY WOOD
UNITED STATES DISTRICT JUDGE